(42 Misc. Rep. 350.)

## REISS v. PLICQUE.

(Supreme Court, Special Term, New York County. January, 1904.)

**1. SUPREME COURT—JURISDICTION—CONTROL OF MINOR.**

A proceeding begun on petition for an order to show cause, procured at the instance of an attorney in fact of the father of a colored jockey, who is under age, in order to get possession of the boy for purposes of gain, without regard to his interests, where all the parties are nonresidents, and where the laws of the state of their residence as to contracts of apprenticeship are involved and are disputed, and conflicting contract rights may arise determinable only by the laws of such foreign state, will not be entertained by the Supreme Court.

Application by Ernest V. Reiss for an order on Alphonse J. Plicque to deliver Wallace Hicks, a minor, to the custody of the petitioner, or show cause. Writ denied.

William T. Houston, for petitioner.
Page & Conant, for defendant.

CLARKE, J. The order to show cause herein provides "that the defendant, Alphonse J. Plicque, forthwith deliver Wallace Hicks, a

minor, to the care, custody, and control of the petitioner, or show cause to the contrary." Said order was not made in an action, but was based upon a petition, with accompanying affidavits and exhibits. It was not a proceeding upon a writ of habeas corpus. It seems to be based upon some general theory of the jurisdiction of this court over minors. It is an attempt by a summary proceeding, involving the consideration of the laws of Louisiana, to obtain an adjudication that articles of apprenticeship there made are null and void, to establish the validity of a subsequent contract of somewhat similar nature, and to transfer the custody of a minor 19 years of age, against his will, from one master to the attorney or representative of another, upon the following state of facts: On the 22d day of March, 1902, in the parish of Lafourche, state of Louisiana, Altimore Hicks, a colored man, unable to write his own name, executed, in the presence of witnesses and before a notary, a document in which he declared that he was the father of Wallace Hicks, then 17 years of age; that in consideration of the sum of $40 to be paid to him every three months, in advance, he bound and obligated himself to let to C. Wright and A. J. Plicque the services of said Wallace Hicks for the period of three years. The paper continued:

"It is understood that the said Wright and Plicque are to feed, clothe, give medical attention when necessary, and to send Wallace Hicks to school whenever possible to do so. Appears, Altimore Hicks further says, that he gives the said Wright and Plicque during these three years all the authority he has over the said Wallace Hicks, his boy. It is well understood that the services of Wallace Hicks are wanted as an apprentice jockey, and for no other causes."

It appears that the amount reserved has been duly paid down to the present time, and that Wallace Hicks has been well cared for, has been taught to ride, has become a successful jockey, that he was, at the time of the institution of these proceedings, temporarily in this state with Mr. Plicque, having come East to ride at various race meetings under his management, intending to return to Louisiana, where all the parties resided, in December, and that the boy was happy and contented, had learned to write, and had saved upward of $1,000 from his employments, and, so far as he was concerned, was not restrained of his liberty, and desired no change in his relations. On the 3d of July, 1903, Altimore Hicks and one Hamilton M. Wright, residents of Louisiana, at the city of New Orleans, in the presence of witnesses and before a notary, executed a document by which they first canceled, annulled, and set aside, so far as they are mutually concerned, the contract entered into by the said Altimore Hicks on one side and the said Hamilton M. Wright and Thomas Hatfield on the other side, executed on the 11th day of April, 1903, "for the services of the jockey, Wallace Hicks," establishing, therefore, that the father had sought to make another and previous contract in relation to his son. Secondly. Hicks canceled, revoked, and set aside a power of attorney executed on April 11, 1903, to said Wright and Hatfield. Third. "The said Hicks, having this day appointed and constituted the said Hamilton M. Wright his sole agent and attorney in fact to act for him, * * * does hereby further contract, agree and bind himself not to recall said agency, nor to interfere with the said Hamilton M. Wright while acting under said power of attorney until the objects and purposes therein contemplated

have been fully and finally accomplished." Fourth. Hicks contracted to cancel, annul, and set aside "[thereby specially affirming the power already delegated for that purpose to said Hamilton M. Wright] the contract executed March 22, 1902, whereby the said Altimore Hicks apprenticed his son, Wallace Hicks, as jockey to C. F. Wright and A. J. Plicque for three years from the date of said act." Fifth. Wright bound himself to represent said Altimore Hicks, and in his name, and for his use and benefit, to institute all suits or actions necessary for the cancellation of, first, the contract of March 22, 1902, between Hicks and Wright and Plicque; second, the contract between Hicks and himself and Hatfield. He further bound himself, first, to effect a compromise of the rights of Altimore Hicks in any matter whatsoever; second, to secure possession, authority, and control over the person of Wallace Hicks, whether by habeas corpus or otherwise; and third, to make any and all contracts which it may be necessary or advisable to make, or which he may see fit to make, for hiring out the services of Wallace as jockey. Altimore Hicks further agreed to divide equally with Wright "all the moneys, sums, credits or property which he may be entitled to receive under and by virtue of any compromise which the said Wright may effect with A. J. Plicque, or any one else, secured under the contract of apprenticeship executed March 22, 1902. And also to divide equally with said Wright the rights, claims, credits, prices, sums or moneys received, or to be received, from any contract which the said Wright may make in the name of said Altimore Hicks with any one for the services of the said Wallace Hicks as jockey." There was also executed on the same day a power of attorney in the most sweeping terms, in furtherance of said contract, to Wright, with power of substitution and revocation. Said Wright, on September 9, 1903, executed a power of attorney to the petitioner herein "to do and perform all and singular the matters and things delegated to him, Wright," by the above-mentioned contract and power; and it is upon said papers that this proceeding is based. Notwithstanding the irrevocable provisions of said papers, Mr. Plicque produces a paper executed by said Altimore Hicks, October 17, 1903:

"By these presents, I appoint Emile Kahn, of Raceland, La., as my agent and attorney in fact, and I authorize him to transact all my affairs as well as to make and sign all contracts for my minor son, Wallace Hicks, and I herewith ratify and indorse all contracts and agreements that the said Emile Kahn may make or enter into regarding my son Wallace; and I ignore and refute all contracts and agreements that are not made and signed by the said Emile Kahn."

Surely an easy way to dispose of contracts to "ignore and refute them," but perhaps indicative of the mental caliber and moral stability of this father, with his numerous conflicting agreements disposing of the services of his son. Petitioner claims that, under the law of Louisiana, contracts of apprenticeship expire for males when they attain the age of 18. Thus, claiming that the contract with Plicque is at an end, he wishes this court to establish the validity of the subsequent contract with Wright. But he claims possession of the boy under the contract. I know of no contract which confers the right of possession of a boy except a contract of apprenticeship, and if petitioner's claim is correct, that such contracts by the law of Louisiana are invalid after the boy

reaches the age of 18, then this subsequent contract is also invalid. If not a contract of apprenticeship, it must be some form of slavery or peonage forbidden by the Constitution of the United States. Affidavits are submitted to show that petitioner's contention is ill-founded, and that under the laws of Louisiana the period of apprenticeship may extend to the age of 21, and therefore the contract with Plicque is valid. But irrespective of that, I fail to see how petitioner can procure any relief in this summary proceeding. This is not a habeas corpus proceeding. Such has already been instituted and dismissed. Whatever rights may exist 'under the several contracts can only be tried out in an action, and that should be brought in the state where the contracts were made, and where all the parties reside. If the proceeding is to be reviewed as one invoking the power of the court to exercise care, custody, and control of minors, irrespective of the contractual relations set forth, I am quite satisfied that no good reason is shown to change the relations now existing. It seems a bald attempt to get possession of a valuable asset in the shape of a good jockey for purposes of gain, without any consideration whatever as to the wishes or interests of the boy himself.

Motion denied; $10 costs.